IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ARTYSHA DEXTER,<br><br>                Plaintiff,<br><br>vs.<br><br>FORD MOTOR COMPANY,<br><br>                Defendant. | ORDER & MEMORANDUM DECISION<br><br><br>Case No. 2:01 CV 595 TC |

      The State of Nevada Division of Health Care Financing and Policy ("Nevada Medicaid") and Afeni Banks request permission to intervene in this lawsuit, claiming that they are entitled to share in the proceeds of a pending settlement agreement between Artysha Dexter, as personal representative of the heirs of Kelvin Dexter, and Ford Motor Company. Ms. Dexter opposes intervention, arguing that neither Nevada Medicaid nor Ms. Banks has a valid claim to money obtained through the proposed settlement.

      This action was originally brought by Mr. and Ms. Dexter after Mr. Dexter suffered severe injuries in a rollover accident involving a Ford van. As stated in the Dexters' First Amended Complaint: "This is an action to recover damages for personal injuries to Kelvin Dexter arising out of a motor vehicle accident . . . ." (First Amended Compl. 2, ¶ 1, dkt. #187.)

      Approximately four years after initiating this lawsuit, Mr. Dexter died and the nature of the action changed. The parties filed a stipulated motion with the court, requesting that Ms.

Dexter "be substituted as the named plaintiff acting as personal representative of Kelvin Dexter for the benefit of his heirs." (Stip. & Joint Mot. to Sub. Artysha Dexter as the Named Plf. & to Amend the Compl. 2, dkt. #247.)  According to that stipulation, Ms. Dexter desired "to continue this action as a wrongful death action." (See id.)  United States Magistrate Judge David Nuffer signed an order granting the stipulated motion and accepting the Second Amended Complaint. (See Order on Stip. & Joint Mot. to Sub. Artysha Dexter as the Named Plf. & to Amend the Compl., dkt. #248.)

Ms. Dexter argues that any claim of entitlement asserted by Nevada Medicaid or Ms. Banks to potential settlement proceeds in this case was extinguished when the lawsuit changed from a personal injury action to a wrongful death action.  Accordingly, Ms. Dexter contends that Nevada Medicaid and Ms. Banks' motions to intervene must be denied.

### Analysis

Rule 24(a) of the Federal Rules of Civil Procedure allows anyone to intervene in a lawsuit when the applicant files a motion in a timely manner and "claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest." Fed. R. Civ. P. 24(a).  Intervention of right is not appropriate if "the applicant's interest is adequately represented by existing parties." Id. ; see also San Juan City, Utah v. United States, 420 F.3d 1197, 1207 (10th Cir. 2005) (stating that intervention should be allowed "somewhat liberal[ly]).  "It is not necessary . . . for a party intervening as a matter of right to be able to assert its own cause of action." Id. at 1209.

Nevada Medicaid and Ms. Banks both claim that they hold valid liens against any settlement recovery that would have been received if Mr. Dexter had personally recovered for his

2

injuries. Nevada Medicaid cites Nevada Revised Statutes section 422.293 in support of its position. That section states that Nevada Medicaid is subrogated to the right of a Medicaid recipient to recover from a liable third party that caused injuries resulting in medical expenses covered by Nevada Medicaid. See Nev. Rev. Stat. § 422.293. In situations where a subrogation right exists, Nevada Medicaid "has a lien upon the proceeds of any recovery from the persons liable, whether the proceeds of the recovery are by way of judgment, settlement or otherwise." Id.

Ms. Banks's lien is evidenced by a document titled: "Assignment of Claim for Child Support." Through that document, Mr. Dexter assigned his "claim and interest in the amount of $34,700.00 from my net settlement." (See Assign. of Claim for Child Supp., attached to Mot. to Intervene, dkt. #277, as Ex. 3.)

Ms. Dexter does not take exception to Nevada Medicaid and Ms. Banks' assertion that they would have a valid lien on a recovery in Mr. Dexter's personal injury action. Rather, Ms. Dexter asserts that any liens that would have attached to Mr. Dexter's recovery in the personal injury case are no longer valid because this lawsuit is no longer a personal injury case. This is so because, under the Second Amended Complaint, Mr. Dexter's heirs will personally recover for the wrongful death of Mr. Dexter and Mr. Dexter's estate will not be compensated for Mr. Dexter's injuries.

Indeed, it is the transformation of this lawsuit from a personal injury case to a wrongful death case that Nevada Medicaid and Ms. Banks identify as the cause of their grievance. Nevada Medicaid asserts that, following Mr. Dexter's death, Ms. Dexter "had incentive to amend her Complaint to avoid any allocation for [Mr. Dexter's] medical costs . . . . Manipulation of the apportionment of settlement proceeds denies Nevada Medicaid its fair allocation and should not

be allowed by this Court." (Mot. to Intervene & to Enforce Medicaid Lien 4, dkt. #282.) Ms. Banks seeks to intervene "on the grounds that the Complaint on file in this case was amended to prevent intervening parties from collecting on liens." (See Mot. to Intervene 1, dkt. #277.)

Ms. Dexter responds that any allegation that this action was transformed from a personal injury lawsuit to a wrongful death lawsuit is "spurious," and "entirely untrue." (Plf.'s Response to Mot. to Intervene & to Enforce Medicaid Lien 3, dkt. #289.) Ms. Dexter's assertions aside, it is undeniable that the Second Amended Complaint is only a slightly modified version of the First Amended Complaint. Although the Second Amended Complaint declares that it is seeking recovery for wrongful death, no express cause of action for "wrongful death" appears in the complaint. Rather, the causes of action pleaded in the First Amended Complaint (i.e., strict liability, negligence, punitive damages, and loss of consortium) remain, with only the prayer for relief undergoing significant alteration. Further, while Ms. Dexter states that her amendment of the complaint was consistent with Utah law, she fails to mention that Mr. Dexter's personal injury action survived his death and that Mr. Dexter's heirs could have pursued that claim. See Utah Code Ann. § 78-11-12(1)(a) ("Causes of action arising out of personal injury to the person . . . do not abate upon the death . . . of the injured person. The injured person or the personal representatives or heirs of the person who died have a cause of action against the wrongdoer . . . .").

Regardless, Utah law is clear that any recovery achieved in a wrongful death action is a recovery personal to the heirs of the decedent and not a recovery by the decedent's estate. See Oxendine v. Overturf, 1999 UT 4, ¶ 19, 973 P.2d 417 ("Damage awards in wrongful death cases reflect the loss of the individual plaintiff."); Switzer v. Reynolds, 606 P.2d 244, 247 (Utah 1980) (stating that damages in wrongful death actions are intended to compensate loss suffered

by individual heirs).  In short, the amendment of the complaint effectively deprived Nevada Medicaid and Ms. Banks of the opportunity to have their liens satisfied from the proceeds of any settlement received from Ford in settlement of the heirs' wrongful death claim.

Although Nevada Medicaid and Ms. Banks had an interest in any recovery obtained on Mr. Dexter's personal injury claims, those interests were contingent upon Mr. Dexter's recovery. With the death of Mr. Dexter and the amendment of the complaint, it is now clear that neither Mr. Dexter nor his estate will receive a recovery in this lawsuit for Mr. Dexter's personal injuries.  As a result, Ms. Banks's child-support lien will not attach to the wrongful death settlement proceeds.  But her daughter, as an heir of Mr. Dexter, will share in any settlement of the heirs' wrongful death claim.  Additionally, Ms. Banks is entitled to seek recovery for back child support from Mr. Dexter's estate.

Further, despite the fact that Nevada Medicaid's lien cannot attach to the wrongful death settlement, Nevada Medicaid is presumably capable of directly pursuing an action against Ford in an effort to secure reimbursement for its medical expenditures.[1]  See NRS § 422.293 ("If a recipient or his successors in interest fail or refuse to commence an action to enforce the legal liability [of a third party], the department may commence an independent action . . . to recover all costs to which it is entitled.").

The Second Amended Complaint currently governs this lawsuit.  While that complaint is far from a model of clarity, it essentially drops all previously pleaded causes of action in favor of a single cause of action for wrongful death.  Nevada Medicaid and Ms. Banks cannot claim a

---

[1] Ford has indicated that its only desire in this case is "that payment of the Settlement Funds result in the full adjudication and settlement of any past and all future claims against Ford."  (Ford's Mot. for Leave to Interplead Settlement Funds Under Seal 3, dkt. #261-1.)  While Ms. Dexter is arguably capable of providing Ford with a release from Mr. Dexter's estate, it is doubtful that Ms. Dexter has the capability to effectively eliminate all subrogation rights held by Nevada Medicaid.

right to recover money received in settlement of a wrongful death claim because their liens are exclusively tied to a personal recovery by Mr. Dexter or his estate. Accordingly, Nevada Medicaid and Ms. Banks have no interest in the present lawsuit and any tangential interest may be adequately protected through means other than intervention in this case.

## Conclusion and Order

For the foregoing reasons, Ms. Banks's Motion to Intervene is DENIED and Nevada Medicaid's Motion to Intervene and to Enforce Medicaid Lien is DENIED. Given the court's ruling, Plaintiff's Motion to Dismiss Medicare and Medicaid Liens Against the Wrongful Death Settlement Funds is DENIED as moot.

DATED this 31st day of July, 2006.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge